United States District Court
Southern District of Texas
**ENTERED**
February 26, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INFRASOURCE CONSTRUCTION, LLC, D/B/A QS MATS, *Plaintiff*, | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-2672 |
| STURGIS MAT COMPANY, INC. *Defendant*. | § § § | |

## MEMORANDUM AND RECOMMENDATION

This breach of contract case is before the Court on Plaintiff QS Mats' Partial Motion for Summary Judgment.[1] ECF 32. Having reviewed the parties' submissions and the law, the Court recommends that Plaintiff's Motion be GRANTED only to the extent it seeks a ruling on the issue of Defendant Sturgis Mat Company, Inc.'s breach of the parties' 2018 contract. The Partial Motion for Summary Judgment should be DENIED in all other respects.

**I.     Background**

In 2016, Sturgis Mat Company, Inc. (Sturgis) agreed to manufacture and sell 10,000 wooden construction mats[2] to QS Mats (QS). QS paid the agreed purchase price to Sturgis in full. The parties' 2016 agreement was not reduced to a written contract. Although the mats were ready for delivery by January 1, 2017, QS did not take possession of or remove any of the mats from Sturgis' facility until May 2018. Because QS did not retrieve the mats from the Sturgis facility, Sturgis was having to haul its own inventory to other locations. Therefore, on December 6, 2017 the President of Sturgis, George Bowman, notified Steve Hicks of QS that effective December 1,

---

[1] The District Court referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 25.

[2] These mats are "used to perform construction services over softer ground, such as swampy, muddy, or other unstable surfaces." ECF 32 at 6.

2017 Sturgis would begin charging QS a monthly storage fee of $1.50 per mat. QS never responded to Bowman's December 6, 2017 message or follow-up letter. Sturgis proceeded to send invoices to QS for storage fees each month from December 2017 through May 2018. In May 2018, QS arranged to send 904 of the 10,000 mats to a contractor in West Virginia. Later in May 2018, QS, using Sturgis as a broker, arranged to sell the remaining 9,096 mats to Empire Mat. QS never paid any storage fees and did not remove any of the 10,000 mats from Sturgis's Mississippi lot until May 2018. QS concedes that Sturgis is entitled to a broker commission of $45,480 for the sale of 9,096 mats to Empire Mat. ECF 32 at 9.

Meanwhile, on January 29 and 31, 2018 Sturgis contracted with QS to purchase a total of 1,000 mats for $280 each plus tax for a total of $299,600. ECF 32-1. The invoices that comprise the contracts provide that payment is due 60 days from signature, but do not expressly provide for the accrual of interest on past due amounts. *Id.* Sturgis attempted to deliver 775 of the mats to its intended customer, Phillips & Jordan, but Phillips & Jordan rejected 255 of the 775 delivered mats. Phillips & Jordan also informed Sturgis it was rejecting the remaining 225 undelivered mats that were still at QS's facility in Alabama. Sturgis promptly notified QS that Phillips & Jordan rejected 480 of the 1,000 mats Sturgis had purchased from QS and that Sturgis would transport the 255 mats from Phillips & Jordan to Sturgis's Mississippi facility until QS decided what it wanted to do with them. The 225 mats remaining at QS's Alabama facility, which had been rejected by Phillips & Jordan, were sold or transferred by QS to an affiliate. Thus, Phillips & Jordan accepted only 520 of the 1,000 mats. Sturgis to date has not paid QS for any of the mats, although it agrees it owes QS for the 520 mats Phillips & Jordan accepted.

QS sued Sturgis in Texas state court on June 12, 2019 for breach of the January 2018 contracts, seeking the purchase price for 1,000 mats less the agreed commission ($299,600-

$45,480=$254,120.00), plus interest and attorney's fees. Sturgis removed the case to federal court on diversity grounds. QS now seeks summary judgment on its breach of contract claim against Sturgis in the principal amount of $254,120.00, leaving the amount of interest and attorney's fees to be determined at trial.[3]

Sturgis does not dispute the validity of the January 2018 contracts but asserts that judgment should be entered in favor of QS in the amount of only $11,476.00 because: (1) Sturgis rejected 480 of the 1,000 mats and therefore owes only $145,600 for 520 mats; (2) Sturgis is entitled to an offset in the amount of $88,644 for storage fees on the 10,000 mats that Sturgis sold to QS in 2016; (3) Sturgis is entitled to an offset in the amount of $45,480 as a sales commission for helping QS sell 9,096 of the stored mats to Empire Mat; and (4) QS is not entitled to interest or attorney's fees because Mississippi, not Texas, law applies in this diversity case.

## II.    Analysis

### A.  Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). If the party moving for summary judgment bears the burden of proof on an issue he must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If a moving party who does not bear the burden of proof meets its initial burden, the nonmoving party must go beyond the

---

[3] Alternatively, QS seeks judgment in the amount of $165,476.00 if the Court accepts only Sturgis's offset for rejection, or $145,600.00 if the Court accepts only Sturgis's offset for storage fees, in all scenarios leaving interest and attorney's fees for trial. ECF 32 at 21-22.

pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

### B. Choice of Law

QS argues that Texas law applies in this diversity case and has moved for summary judgment under Texas law on all its claims and Sturgis's defenses. Sturgis argues that Mississippi law controls all issues in this case. Sturgis suggests that choice of law "is of particular importance in this action, as it has a material effect on the amount that each party believes is owed between them," citing generally the Mississippi Uniform Commercial Code and the Texas Uniform Commercial Code. *See* ECF 35 at 15. Sturgis also points out that Mississippi law does not provide

a statutory remedy for attorney's fees in a breach of contract action, whereas Texas law does. *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

Federal courts exercising diversity jurisdiction apply state substantive law in a breach of contract action. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). To determine which state's substantive law applies, the Court follows the choice of law rules of the forum state. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249 (5th Cir. 1990). In the absence of a contractual choice of law provision, Texas applies the "most significant relationship test" adopted from the Restatement (Second) of Conflicts of Laws. *Id.* (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979)). The most significant relationship test requires the Court to identify relevant state contacts based on the "qualitative nature of those contacts as affected by the policy factors numerated in Section 6 [of the Restatement]."[4] *Id.*; *Minnesota Min. & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996) (when a contract does not stipulate to applicable law, Texas law follows the general rule of Section 188 of the Restatement which directs that dispute is governed by "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6."). The relevant state contacts the Court considers in a breach of contract case are: (a) the place of the contracting; (b) the place

---

[4] "Section 6, in its entirety, states:
    (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
    (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied."
*Mitchell*, 913 F.2d at 249 (citing Restatement (Second) of Conflict of Laws § 6 (1980)).

of negotiation; (c) the place of performance; (d) the location of the contract's subject matter; and (e) the parties' domicile, residence, nationality, place of incorporation, and place of business. *Contractor's Source Inc. v. Hanes Companies, Inc.*, No. CIV.A.09-CV-0069, 2009 WL 6443116, at *2–3 (S.D. Tex. Dec. 29, 2009); *Hoisting Wire Rope & Sling, LLC v. Accu-Tech Computer Servs.*, No. 2:16-CV-61, 2017 WL 6816502, at *3 (S.D. Tex. Dec. 15, 2017), report and recommendation adopted, No. 2:16-CV-00061, 2018 WL 309774 (S.D. Tex. Jan. 5, 2018) (in the context of contract disputes, the choice of law determination "is made in light of the basic choice of law principles listed in § 6 of the Restatement and by examining the following factors in particular: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."). The choice of law determination must be made on an issue by issue basis. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 n.6 (5th Cir. 2000) ("Texas also requires that a choice of law determination be done on an issue by issue basis."). The determination is not based on the number of contacts, but rather the quality of the contacts. *Id.* The following chart identifies the relevant contacts for QS's breach of contract claim based on the 2018 contract at issue in this case:

| 2018 Contracts 1,000 Mats | Mississippi | Texas |
|---|---|---|
| Place of Negotiation | Sturgis (buyer) calls QS from Mississippi. | QS receives Sturgis's phone inquiry for purchase of mats in Texas. |
| Place of Contracting | Sturgis signs sales quotes in Mississippi. | QS prepares sales quotes in Texas. QS receives signed sales quotes in Texas. |
| Place of Performance | | Payment due in Texas. Mats tendered to buyer in Alabama |
| Location of Mats | Mats located in Alabama but some are moved to Mississippi by buyer. | |
| Parties' Domicile, etc. | Sturgis is incorporated and has its principal place of business in Mississippi. | QS is incorporated in Delaware and has its principal place of business in Texas. |

As reflected in the chart, both Texas and Mississippi have contacts relevant to this contract dispute. The relevant contacts "are given more or less weight depending upon the nature of the suit and the type of contract in dispute." *See Zurich Am. Ins. Co. v. Arch Ins. Co.*, No. 1:19-CV-00024-LY, 2020 WL 4718842, at *5 (W.D. Tex. June 10, 2020), report and recommendation adopted, No. 1:19-CV-24-LY, 2020 WL 4720096 (W.D. Tex. July 16, 2020). In this case, the Court considers the place of performance and the location of the subject matter of the contract to be the most important contact factors in the choice of law determination. *See Hoisting Wire Rope & Sling*, 2017 WL 6816502, at *3 (where the contract was negotiated in the parties' respective locales, place of performance and location of subject matter of the contract were determinative); *see also Cudd Pressure Control, Inc. v. Sonat Expl. Co.*, 202 S.W.3d 901, 906 (Tex. App.—Texarcana 2006), aff'd, 271 S.W.3d 228 (Tex. 2008) ("The most important of these contacts is the place of performance."); *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 535 (Tex. App. 2014)("The comments to section 188 of the Restatement suggest that [the location of the subject

7

matter of the contract] is significant when a contract involves 'a specific physical thing, such as land or a chattel'").

The place of performance for the 2018 contracts was Texas, where payment was due.[5] The goods sold and tendered pursuant to the 2018 contracts were not located in Texas or Mississippi.[6] In looking at the policy considerations of Section 6 of the Restatement, Texas law has a greater interest in the protection of justified expectations because Sturgis reached out to QS in Texas to solicit a purchase from a Texas resident. Finally, because this court sits in Texas the "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied" also favors Texas. *See Bonn Operating Co. v. Devon Energy Prod. Co.*, LP, No. CIV A 4:06-CV-734-Y, 2009 WL 484218, at *7 (N.D. Tex. Feb. 26, 2009) ("Texas courts have also recognized that applying the law of the forum fosters certainty, predictability, and uniformity, if for no other reason than the forum court's familiarity with the forum's law."). For these reasons, the Court finds that Texas law applies to QS's cause of action for breach of the 2018 Contracts, including Sturgis's defenses of rejection and offset.[7]

### C. QS's Claim for Breach of the 2018 Contracts

Under Texas law, "[t]he elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.-Fort Worth 2008, no pet.)

---

[5] Sturgis's Response focuses on contacts related to the formation of the 2016 contract for sale of 10,000 mats. *See* ECF 35 at 17-19. But Sturgis's claim is for offset of damages from breach of the 2018 contract based on storage fees that allegedly began accruing in December 2017. There is no claim in this case for breach of the 2016 sales contract.
[6] Sturgis represents that the mats were delivered to Phillips & Jordan in Mississippi (ECF 35 at 18), but that was solely Sturgis's choice and not a part of the sales contract with QS.
[7] The primary importance of the choice of law in this case is its impact on QS's right to recover attorney's fees for breach of the 2018 contract. QS has not moved for summary judgment on its claim for attorney's fees. As noted where appropriate below, the Court's recommendations on summary judgment would be the same under Mississippi law.

(citing *Harris v. Am. Prot. Ins. Co.,* 158 S.W.3d 614, 622–23 (Tex. App.-Fort Worth 2005, no pet.)).[8]

The parties do not dispute that: (1) the January 2018 contracts are valid; (2) QS performed under the January 2018 contracts by supplying 1,000 mats; (3) Sturgis has never paid for *any* of the 1,000 mats (even though Sturgis agrees it did not reject 520 of the mats); (4) QS has suffered some amount of damages due to Sturgis's failure to pay for *any* of the mats. These undisputed facts satisfy QS's summary judgment burden to prove Sturgis's *liability* for breach of contract. Therefore, QS is entitled to summary judgment that Sturgis breached the 2018 contracts. However, as explained below, fact questions preclude summary judgment in favor of either party with respect to Sturgis's affirmative defenses of offset against the amount owed to QS under the 2018 contracts.[9]

### 1. Sturgis's Claim for Offset Based on Its Rejection of Certain Goods.

The Texas Uniform Commercial Code provides "[r]ejection of goods must be within a reasonable time after their delivery or tender. The rejection is not effective unless the buyer seasonably notifies the seller."[10] TEX. BUS. & COMM. CODE § 2.602; *Glenn Thurman, Inc. v. Moore Const., Inc.*, 942 S.W.2d 768, 772 (Tex. App.—Tyler 1997, no writ) ("Failure of the buyer to reject even non-conforming goods within a reasonable time and to seasonably notify the seller of rejection automatically results in acceptance of the goods under U.C.C. § 2.606(a)(2)"); *T. J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 358 (5th Cir. 1980) ("The [UCC] presumes that the buyer accepts goods unless, following a reasonable opportunity to inspect the goods, the

---

[8] Under Mississippi law, the elements of a breach of contract claim are: "(1) the existence of a valid and binding contract; and (2) its breach by the defendant. *Bus. Commc'ns, Inc. v. Banks*, 90 So.3d 1221, 1224–25 (Miss.2012)." *Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 96 (5th Cir. 2014).
[9] QS previously stipulated that Sturgis could assert all its claims for offset in the context of its timely pleaded affirmative defenses without the need to file a counterclaim. ECF 28.
[10] Mississippi has adopted the same UCC provision: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Miss. Code Ann. § 75-2-602(1).

seller is unequivocally and seasonably notified that the buyer is rejecting the goods."). Sturgis bears the burden to prove it rejected the mats. *Transoil (Jersey) Ltd. v. Belcher Oil Co.*, 950 F.2d 1115, 1120 (5th Cir. 1992) ("A party claiming that it rightfully rejected nonconforming goods must demonstrate that it rejected the goods within a reasonable time following delivery and seasonably notified the seller.").

QS concedes it was promptly informed by Sturgis's buyer, Phillips & Jordan, rejected many of the mats. ECF 32 at 17. However, QS argues that even though it received notice of Phillips & Jordan's rejection of the mats, Sturgis never notified QS that *Sturgis* was rejecting the mats. *See* ECF 32-4 (Hicks Dep.) at 29. QS contends it did not receive notice of Sturgis's rejection until April 18, 2019—16 months after the purchase and two months before QS filed this lawsuit—when it received a letter from Sturgis's counsel. Therefore, QS contends that Sturgis accepted the mats as a matter of law and is obligated to pay for all of them. *EPN-Delaval, S.A. v. Inter-Equip, Inc.*, 542 F. Supp. 238, 247-48 (S.D. Tex. 1982) (plaintiff who did not notify buyer for over two months after delivery accepted the nonconforming goods).

Whether a buyer has adequately rejected goods within a reasonable time is a question of fact. *Trident Steel Corp. v. Vecta Oil and Gas, Ltd.*, Civil Action No. 4:16-cv-0339, 2017 WL 3671299, at * 2 (S.D. Tex. July 7, 2017); *cf. Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 181 (1984) (whether a buyer has given adequate notice of revocation of acceptance is a question for the trier of fact). The Court agrees that, as a matter of law, the April 2019 notice came too late to constitute seasonable rejection of the goods. However, Sturgis represents that the April 18, 2019 letter merely repeated the same rejection that Bowman conveyed to Hicks by telephone right after the mats were rejected by Phillips & Jordan. ECF 35 at 21. Specifically, Bowman testified that he told Hicks on the telephone that Phillips & Jordan was rejecting the mats

10

due to dry rot and he (Bowman) was going to have to "bring them to my yard . . . until you decide what you want to do with the them." ECF 32-2 (Bowman Dep.) at 9-11. Thus, Sturgis has presented evidence sufficient to raise a fact issue as to whether Sturgis rejected the mats by informing QS that the mats were unsatisfactory to its buyer, and that Sturgis was expecting QS to reclaim the rejected mats. *Id.*; ECF 32-4 (Hicks Dep.) at 29-31.

QS argues that, as a matter of law, Bowman's testimony cannot constitute adequate rejection of the goods. QS relies heavily on *HCI Chemicals (USA), Inc. v. Henkel KGaA*, 966 F.2d 1018, 1023 (5th Cir. 1992) in support of this argument. In *HCI*, The Fifth Circuit overturned the district court's finding after a bench trial that, as a matter of fact and law, HCI promptly rejected goods purchased from the seller. *Id*. The Fifth Circuit held that while HCI clearly informed the seller that the goods were nonconforming and had been rejected by its buyer, HCI "never clearly and unambiguously notified [the seller] that HCI would not accept the chemicals." *Id.* The Fifth Circuit determined that HCI's notice to the seller, which included the statement that HCI would hold the seller "responsible for HCI's costs and damages[,] suggest[ed] that HCI would accept the goods but hold [the seller] liable for any losses resulting from the goods' nonconformity." *Id.* In addition, HCI maintained control over the non-conforming goods and sold them to another buyer. *Id.* at 2019. The summary judgment evidence in this case differs from the evidence presented at trial in HCI. For example, Bowman testified that he told Hicks Sturgis was awaiting instructions from QS on what to do with the rejected mats. ECF 32-2 at 9-11. In addition, Sturgis refused to take possession of the 225 mats that remained in Alabama and had been rejected by Sturgis's buyer, Phillips & Jordan. ECF 32-2 at 8; 32-4 at 17. Finally, QS, not Sturgis, sold the 225 mats in Alabama to a QS affiliate, something QS could not have done absent a rejection of those mats by Sturgis. ECF 32-4 at 18-19. The summary judgment record demonstrates that Sturgis has raised

11

a fact issue on its defense of rejection and a jury should decide whether its actions constitute an effective rejection of 480 of the 1,000 mats.[11]

### 2. Sturgis's Claim for Offset Based on Storage Fees.

QS contends it is entitled to summary judgment on Sturgis's claimed offset for storage fees because no contract for the payment of storage fees exists between the parties. Sturgis responds that QS was supposed to take possession of the 10,000 mats on January 1, 2017 but failed to do so, requiring Sturgis to store the mats for 18 months. Furthermore, Sturgis argues that Bowman's December 6, 2017 text message and follow-up letter to Hicks informing QS that it would be imposing a monthly storage fee, along with the monthly invoices sent to QS for storage fees from December 2017 through May 2018, obligated QS to either remove the mats from Sturgis's property or pay the storage fees.

Whether a contract exists involves questions of fact. *See R.R. Comm'n of Texas v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 575 (Tex. 2016) ("trial court erred in resolving the contract-formation issue as a matter of law.").[12] Under Texas law, a party's silence or conduct may in certain circumstances be interpreted as acceptance. *See Commercial Bank of Texas, N.A. v. Luce*, 92 S.W.3d 636, 639 (Tex. App. 2002) (while inaction is not generally construed as assent, "the parties' relationship or the surrounding circumstances [may] justify the expectation of a reply."); RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981).[13] Whether silence may be construed as

---

[11] Hicks testified in his deposition that QS agreed to a $63,000 credit for the 225 mats Sturgis never picked up and that QS transferred to an affiliated company. ECF 32-4 at 17. QS does not concede this credit in its Motion for Summary Judgment.

[12] *See also Jackson HMA, LLC v. Morales*, 130 So. 3d 493, 497–98 (Miss. 2013) (The existence of a contract involves both questions of fact and law; when a contract's existence turns on the resolution of conflicting evidence, it presents a "question of fact properly presented to, and determined by, the jury.") (quoting *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir.1995)).

[13] Section 69 provides:
> (1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:

12

acceptance is a question of fact. *Supply Pro, Inc. v. Ecosorb Int'l, Inc.*, No. 01-15-00621-CV, 2016 WL 4543136, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, pet denied).

In any event, whether or not a valid contract for storage exists is not dispositive of the issue. Sturgis did not timely plead a counterclaim for breach of contract but did plead a timely claim for equitable offset.[14] *See* ECF 5 at §§ 4-8; *Capital Concepts Properties 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) ("Setoff is a form of equitable counterclaim which brings together obligations of parties opposing each other and, by judicial action, makes each obligation extinguish the other.");[15] 20 AM. JUR. 2D COUNTERCLAIM, RECOUPMENT, ETC. § 6 ("The doctrine of setoff, or compensation as it is called in civil law jurisdictions, is essentially an equitable one, requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against the other." (collecting cases from multiple jurisdictions)). Thus, even in the absence of a valid contract between Sturgis and QS for the payment of storage fees, equity could provide Sturgis a remedy to offset those amounts from QS's breach of contract damages. *See Reveille Trucking, Inc. v. Lear Corp.*, No. 4:14-CV-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017) ("The elements of an unjust enrichment claim under Texas law are: "(1) that valuable services were rendered or materials furnished; (2) for the person

---

(a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
(c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.
(2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. But if the act is wrongful as against the offeror it is an acceptance only if ratified by him

[14] As previously noted, the Court denied Sturgis's motion for leave to amend to assert a breach of contract counterclaim but QS stipulated that Sturgis could assert its claims for offset in the context of its timely pleaded affirmative defenses. ECF 28.

[15] *See Wardlaw v. Volume Millwork Inc.*, No. CV H-04-3526, 2005 WL 8164075, at *2 (S.D. Tex. Dec. 7, 2005) ("the terms 'offset' and 'setoff' are often used interchangeably and considered to have the same meaning").

13

sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.").[16]  Based on the summary judgment record and the law, the Court finds that QS has failed to demonstrate it is entitled to judgment as a matter of law on Sturgis's claim for offset.

### III. Conclusion and Recommendation

For the reasons discussed above, the Court recommends that QS's Motion for Partial Summary Judgment (ECF 32) be GRANTED in part and DENIED in part.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on February 26, 2021, at Houston, Texas.

                                                   Christina A. Bryan
                                        United States Magistrate Judge

---

[16] *See also Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 371 (Miss. 2013) ("Unjust enrichment applies to situations where there is no legal contract and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." Citing *Powell v. Campbell*, 912 So.2d 978, 982 (Miss.2005)).